# CHARLESTON.

### BUENA VISTA CO. *v.* BILLMYER.

### Decided December 8, 1900.

1. FRAUDULENT MISREPRESENTATION—*Right of Action.*

A statement or promise, to be actionable on the grounds of fraudulent misrepresentation, must be of a fact alleged to exist in the present or past, contrary to the truth, as an inducement to a contract, and not a general guaranty or promise as to future events, dependent on future contingencies, thoroughly believed in by the person making the statement, be ever he so badly mistaken in his opinion or judgment. (p. 386).

2. FALSE REPRESENTATION—*Fraudulent Purpose—Voidable.*

If a person, being in a situation to know, takes advantage of the confiding ignorance of another, not equally well situated, and falsely represents that a future event will certainly come to pass, and thereby induces the deceived to enter into a disadvantageous contract, such misrepresentation cannot be excused as the mere expression of opinion, but will be regarded as the utterance of a known falsehood for fraudulent purpose, and is actionable and renders the contract voidable. (p. 387).

3. GUARANTY—*Insufficient Plea.*

Proof of a general guaranty as to future undertakings, not shown to be made as a specific inducement to secure the contract in suit, is insufficient to sustain a plea alleging that in consideration of the making of such contract the plaintiff undertook and promised that such future undertaking would certainly be done and performed by plaintiff and others. (p. 388).

4. PAROL EVIDENCE—*Contracts.*

Parol evidence of prior or contemporaneous verbal contracts or promises is not admissible to vary, contradict, or explain the terms or consideration of a complete, unambiguous written contract. (p. 388).

Error to Circuit Court, Jefferson County.

Action by the Buena Vista Company against J. D. Billmyer. Judgment for plaintiff. Defendant brings error.

*Affirmed.*

George Baylor, for plaintiff in error.

D. C. Westenhaver and Hugh A. White, for defendant in error.

Dent, Judge:

The Buena Vista Company obtained a judgment on demurrer to evidence against J. D. Billmyer in the circuit court of Jefferson County for the sum of eight hundred and eighty-three dollars and sixty-one cents. The issue was made on two special pleas, Nos. 5 and 6. As the pleas state the controversy between the parties, they are here copied:

*Special Plea No. 5.* "And the said defendant, by his attorney, comes and says that before and at the time of the making of the said notes sued on in the declaration mentioned, to-wit, on the 8th day of April, 1891, the said plaintiff, in consideration that the said defendant would purchase of plaintiff six lots, viz: Nos. 10, 11, 12, 13, 15 and 16, in block No. 38, section 1, fronting on Poplar avenue, in the town of Buena Vista, in the state of Virginia, owned by the plaintiff and shown on map of said company's property, at and for a certain price, to-wit, the sum of nine hundred dollars—that is, one hundred and fifty dollars per lot, one-third cash and residue in notes, undertook and then and there promised the said defendant that there should be constructed and completed a steel plant, then in the course of erection, in the vicintiy of said six lots by plaintiff and would when completed work two or three thousand hands, and that the same would be completed by the A. K. Rarig Machine and Boiler Shops, in the vicinity of August, 1891; also undertook and faithfully promised that plaintiff would in four months from that date build not less than seventy-five houses on its lots in the vicinity of said six lots; and the said defendant avers that he, trusting and confiding in the said promises and undertakings of the said plaintiff, did pay to plaintiff the sum of three hundred dollars and did execute and deliver the twelve notes sued on in payment of the price aforesaid of said lots, and there was no other consideration or inducement whatsoever for the mak-

ing of said notes sued on. And the said defendant further says that the said plaintiff did not perform or regard its said promises and undertakings, but therein wholly failed, in this—that the said steel plant was not completed and no hands were worked in it; that said Rarig Machine and Boiler Works instead of working one thousand five hundred hands by the first day of August, 1891, did not work any hands, but was shut down before that date; that plaintiff in four months, nor any other time, ever built a single house on the lots in the vicinity of said six lots, and said defendant avers that by reason of the breach aforesaid of the said promises and undertakings of the said plaintiffs, the said lots became and were of little or no value to the said defendant, and the said defendant says that by reason of the promises aforesaid he has suffered and sustained damages amounting in the whole to large sums of money, to-wit, the sum of one thousand three hundred dollars, which is still unpaid, due and owing from said plaintiff to said defendant, and the said defendant is ready and willing and hereby offers to set-off and allow the same against the sum of money payable to the said plaintiff by the said defendant by reason of the notes sued on, and asks judgment for the excess over and above said amount due plaintiff. And this the said defendant is ready to verify.

Geo. Baylor, P. D."

*Special Plea No. 6.* "Defendant says plaintiff ought not to have or maintain its action against him by reason of anything alleged in its declaration, because he says the notes sued on in the declaration were made and given to plaintiff in part payment of the purchase money of six lots, viz: Nos. 10, 11, 12, 13, 15 and 16, in block 38, section 1, fronting on Poplar avenue in the town Buena Vista, in the state of Virginia, owned by plaintiff and sold by it to the defendant for the sum of nine hundred dollars—that is, one hundred and fifty dollars for each lot; one-third of the purchase money, three hundred dollars being paid by defendant to plaintiff in cash, and the residue being represented by the twelve notes sued on; that at the time said lots were purchased and said notes executed, to-wit, April 8, 1891, the plaintiff was the owner of certain real estate adjacent to and in the vicinity of said six lots, all of which was platted and laid out in streets and lots, and said plaintiff was authorized by its charter to carry on the business of buying and selling real

estate, of mining and manufacturing, of erecting and maintaining houses, buildings, machinery and structures on its property and operating the same; that on the 8th day of April, 1891, a real estate agent of the said plaintiff made to the defendant the statements hereinafter set out, as also made to the defendant by the president of the Buena Vista Company—the plaintiff, for the purpose of inducing the defendant to purchase said six lots and assured the defendant that the plaintiff would verify the same; that the defendant acting with due care and prudence on his part sought out the president of said Buena Vista Company, the plaintiff, and the said president then and there verified the statements of the said agent of plaintiff, and then and there stated to said defendant and guaranteed as facts upon which defendant could rely that plaintiff would complete a steel plant, then in course of erection by plaintiff in the vicinity of said six lots, and that plaintiff would, when completed, work in same two or three thousand hands, and that plaintiff would complete the same by August, 1891; also that plaintiff would work or cause to be worked in the A. K. Rarig Machine and Boiler Works in the vicinity of said six lots one thousand five hundred hands by said August 1, 1891; also that plaintiff would in four months from that date build on its lots in the vicinity of said six lots not less than seventy-five houses; that the defendant well knowing the plaintiff's superior knowledge and means of information about the affairs of the plaintiff, and the same not being equally open to the defendant and solely relying on the said statements, representations, assurances and guarantees of the said plaintiff, so made as aforesaid, was induced thereby and did purchase said six lots, pay in cash to plaintiff three hundred dollars, and execute to it the twelve notes sued on, for deferred purchase money.

"Defendant says that said statements, representations and assurances were false and said guarantees never fulfilled by plaintiff; that said steel plant was never completed and no hands were ever worked in it; that plaintiff never worked or caused to be worked in said Rarig Machine and Boiler Works one thousand five hundred hands by August first, but the same was shut down before said date and ceased to be operated; that plaintiff in four months, nor in any time, ever built a single house on the lots in the vicinity of said six lots, so that the said lots were and are of no value whatever to the defendant or any one, and the said notes and the said purchase without any consideration whatever,

and the said defendant says that by reason of the promises afore-
said he has suffered and sustained damages amounting in the
whole to a large sum of money, to-wit, the sum of one thousand
three hundred dollars, which is still unpaid, due and owing
from said plaintiff to said defendant, and the said defendant is
ready and willing and hereby offers to set-off and allow the same
against the sum payable to plaintiff by reasons of said notes sued
on, and asks judgment for the excess over and above said amount
against the plaintiff; and this the said defendant is ready to
verify.

GEO. BAYLOR, P. D."

The verifications in usual form are omitted. The plaintiff
objected to the filing of these pleas, but the court overruled the
same. This was error in so far as plea No. 6 was concerned.
This plea is not founded on contract, but on fraudulent repre-
sentation. The representations are not of existing facts. They
are statements of what the plaintiff was willing to guarantee
would be done in the future. Nor does the plea allege that the
person making them knew they were false, and made them to
induce plaintiff to purchase the lots. Such an allegation might
have changed the force of the plea. The fact that plaintiff failed
to fulfill such statements at the appointed time does not make
them fraudulent in their inception. In the absence of allega-
tion or proof to the contrary, it must be presumed that the per-
son making such statements confidently believed they would
come to pass, and was ready to vouch for them. I believe that
man's wicked world is nearing dissolution and am willing to
guarantee that the time is not far distant, yet I would advise
no one to stop dealing in real estate on the strength of such be-
lief, although there are other investments that would be a hun-
dred fold more profitable from my point of view. I may be mis-
taken. So was the president of this company. He made no
representation as to a material existing fact, but simply said
the company would guarantee that certain future things would
be done. He believed it and had good reason therefor. Men
of means hastening to be rich gathered around seeking invest-
ments. They were buying lots at fancy prices. He had the
fever. They caught it, and it reacted upon him. As they in-
vested, he became more feverish, and he imagined that all the
inflated plans of his company were bound to succeed. He cher-
ished not a single doubt of it, and had no hesitancy in saying so.

He was not trying to commit fraud. But was trying to get rich and have all others do likewise. The millenium was about to dawn at Buena Vista, and he wanted everybody to enjoy it. How can we say his statements were fraudulent? He did not know they were true, but thought they would come true. Nay he was sure they would. Defendant heard him, believed him and invested. Deluded himself, he deluded others. Now, if he had made a false statement as to any existant fact, whether he knew it to be true or not, and had thereby misled the defendant into the purchase of the lots, then the company would have been liable. If he had said the company has so many millions of dollars to spend, that the lots were underlaid with gold, that a complete steel plant had been contracted for and that a contract for the building of seventy-five houses had been made and these statements or any of them were false, then the company would have been liable, for this would have been the false statement of an alleged fact, and not of mere opinion or belief. But he gave nothing but the great expectations of the company which he said it would guarantee. The defendant asked for none of the facts on which these expectations were founded. If he had he could have formed his own opinion. He relied on the verbally guaranteed opinion of his informant, without seeking the foundation therefor.. Nor had his informant any sources of information not equally open to him. It is true he was president of the company, but if he had inquired, he might have found out all the facts on which the president's belief was founded, and become filled with all the superior knowledge he possessed. The plea alleges that the means of information were not equally open to the defendant, yet it is not alleged how they were closed to him, for there is no allegation that any information he sought was refused him. The plea as a whole is to the effect that the president assured him what the company expected to do in the future, and because he trusted him he believed the promises would come true. It is impossible to say that such representations were fraudulent, although defendant was induced thereby to purchase the lots. He banked on another man's opinion and lost. *Grim* v. *Byrd,* 32 Grat. 293; *Wilson, Trustee,* v. *Carpenter's Admr.,* 91 Va. 183; *Watkins* v. *West Witheville,* 92 Va. 1; *Max Meddews Co.* v. *Brady, Id.* 71; *Orr* v. *Litten & Goodloe,* 93 Va. 263; *Wren* v. *Moncure,* 95 Va. 369; *Owens* v. *Boyd Land Co., Id.* 560; *Strickland* v. *Graybill,* 97 Va. 602; *Love* v. *Teter,*

BUENA VISTA CO. *v.* BILLMYER. [48

24 W. Va. 741; *Lambert* v. *Crystal Spring Land Co.*, 27 S. E. R. 462; *Slowotter* v. *Oak Ridge L. Co.*, 27 S. E. R. 466; 14 Am. & En. En. Law (2d Ed.) 33; *Gordon* v. *Butler*, 105 U. S. 533.

Plea No. 5 is equivalent to an action on contract, and is to the effect that if the defendants would purchase the lots at the price agreed the plaintiff promised and undertook to erect certain buildings, employ a certain number of hands and build certain houses in a fixed time. The only evidence to sustain this plea is that of the defendant, who testifies that "Mr. Barclay, (president of the company), said that the Buena Vista Company would guarantee and promise that the Rarig Boiler Company would locate there, and they would work one thousand five hundred hands in the shops, and that they would begin by the 1st of August, 1891, and that the steel factory would be built and would work three thousand men. He also said that the company would erect three hundred houses; that they would be erected for the hands to live in that would be employed in these factories. On the strength of this guaranty I purchased the lots." This evidence fails to show that this guarantee and promise was actually given in consideration that the defendant would purchase the lots. It is nothing more than the statement of the president that the company would make a general guaranty and promise that these certain things would come to pass in the future, but not because of any lots to be purchased by the plaintiff. There was no attempt to obligate the company to furnish these improvements in consideration that the defendant would purchase the lots. The improvements were guaranteed whether the defendant purchased or not, and entirely independent thereof. If defendant wanted to take advantage of plaintiff's expectations, he had the right to do so, but so far as the evidence shows they were not involved in his purchase. Because he was informed of these extensive and prospective improvements, he probably purchased but the evidence clearly refutes the plea that the company promised in consideration of his purchase, it would guarantee these improvements. The evidence itself is wholly incompetent and improper. It is an attempt to vary a written contract by previous and co-temporaneous oral undertakings or promises. The defendant purchased the lots, gave his notes for the purchase money, and executed a trust to secure them. Nothing of the alleged guaranty and promises of the plaintiff are contained therein. Nor are they in any sense

ambiguous. They are complete in themselves. The law has been so firmly settled in this respect that it is needless labor to repeat it here. *Knowlton* v. *Campbell,* decided at this term; *Howell* v. *Behler,* 41 W. Va. 610; *Long* v. *Perine, Id.* 314; *Crislip* v. *Cain,* 19 W. Va. 438; *Slaughter* v. *Smither,* 97 Va. 202; *Bank* v. *Walton,* 96 Va. 435; *Martin* v. *Lewis,* 30 Grat 672; *Woodward, Baldwin & Co.* v. *Foster,* 18 Grat. 200; *Towner* v. *Lucas,* 13 Grat. 705.

If the defendant intended to rely on the alleged undertakings and promises of the plaintiff made prior thereto or co-temporaneous therewith, he should have made them a part of his written obligations which are a complete bar thereto.

The judgment is affirmed.

*Affirmed.*