# CHARLESTON.

## McClain, Adm'x. v. Marietta Torpedo Co.

### Submitted April 22, 1919.   Decided May 6, 1919.

1. APPEAL AND ERROR—*Explosives—Evidence—Question for Jury—Verdict.*

    Where the testimony of witnesses in respect to the manner in which frozen nitro-glycerine was being thawed, preparatory to shooting an oil well, which exploded causing the death of plaintiff's intestate, one of such witnesses testifying that it exploded while suspended in a barrel of water into which a steam pipe was inserted and the steam turned on, which was admittedly negligent, and another, the expert who had charge of the nitro-glycerine and was employed by defendant to shoot the well, testifying that he laid it carefully on the ground, and did not put it in the barrel, the question of negligence is for the jury to determine from the conflicting evidence and the physical results produced by the explosion, and, unless such physical results are of such conclusive character as to demonstrate the falsity of the testimony of one or the other of said witnesses, the verdict should not be disturbed. (p. 140).

2. TRIAL—*Discretion of Trial Court—Experiment.*

    The trial court may, within its discretion, grant or refuse permission to make an experiment in the presence of the jury, for the purpose of demonstrating the falsity of certain testimony. (p. 148).

3. COMPANION CASE.

    The points of the syllabus in *Merrill* v. *Marietta Torpedo Co.*, 79 W. Va. 669, approved. (p. 148).

    (MILLER, PRESIDENT, dissenting).

Error to Circuit Court, Roane County.

Action by Estella F. McClain, administratrix, against the Marietta Torpedo Company. Judgment for plaintiff, and defendant brings error.                                        *Affirmed.*

*Pendleton, Mathews & Bell,* for plaintiff in error.

*Thos. P. Ryan, H. C. Ferguson* and *Chas. E. Hogg,* for defendant in error.

WILLIAMS, JUDGE:

Plaintiff, administratrix of her deceased husband, Clark R. McClain, recovered a judgment against the Marietta Torpedo Company in an action of trespass for negligently causing his death, and defendant brings error.

His death was caused by the premature explosion of nitroglycerine at an oil well in Roane county, known as the Jacob Reynolds Well No. 3, where defendant's agent, William Norris, had taken it for the purpose of shooting the well. It was the same accident by which Edward P. Merrill was injured, and for which he recovered a judgment against this same defendant, which was affirmed on writ of error to this court. *Merrill* v. *Marietta Torpedo Co.,* 79 W. Va. 669.

Defendant is engaged in the manufacture of nitro-glycerine and shooting oil wells and employed William Norris as its agent to shoot wells. The facts and circumstances disclosed by the evidence in this case are very much the same as they were in the Merrill case. Some additional facts, however, appear in this case, that were not brought out in the other. Here a carefully prepared map was filed, showing the relative locations of the oil well derrick, boiler, engine, belt house, walkway leading from the engine to the derrick, the sixty barrel water tank, the barrel of water in which plaintiff claims the nitro-glycerine exploded, the place on the ground between the barrel and the tank where witness Norris swears he laid the cans containing the nitro-glycerine and where defendant contends it exploded, Norris' wagon in which he hauled the nitro-glycerine to the well, Merrill's position and the position of deceased's body immediately after the explosion, and other objects; and testimony tending

to prove the ground was torn up by the force of the explosion between the barrel and the tank, that mud was spattered up on the derrick, and that Merrill, the chief witness for plaintiff, had made contradictory statements concerning the cause of the accident. Otherwise, the evidence in the two cases is not materially different.

The declaration contains a number of counts, some of them counting on the negligent manner in which defendant handled the nitro-glycerine, without specifying any particular act of negligence causing it to explode. But the only count, to sustain which any evidence was offered, alleges that the specific act of negligence causing the injury was the suspending of two cans of frozen nitro-glycerine, containing eight quarts each, in a barrel of water into which one end of a steam pipe attached to the engine had been inserted, and then turning the steam in for the purpose of heating the water and thawing the nitro-glycerine, so that it could be transferred from the cans into torpedoes and lowered into the well.

Only two eye witnesses testify concerning the cause of the accident, Merrill for the plaintiff, and Norris for defendant, the former a well driller in the employ of the Ohio Fuel Oil Company, the owner of the well, and the latter the servant and agent of the Marietta Torpedo Company, who had contracted to shoot the well. These witnesses were not fellow servants, nor was deceased, who was a tool dresser employed by the Ohio Fuel Oil Company, a fellow servant of Norris. Shortly after noon on March 30th, 1914, Norris brought to the well, in a spring wagon, forty quarts of nitro-glycerine put up in cans of eight quarts each. He unhitched his horses, tied them some distance away from the wagon and left it standing in the road, above and not far from the engine house. Witness Merrill and deceased then got an oil barrel, that had been used about the derrick, and placed it on the floor of the engine house at an opening in the wall, allowing a portion of the bottom of the barrel to rest on the board walk outside, which was on a level with the floor. Deceased assisted Norris in connecting a steam pipe to the grease cup of the engine, extending the pipe to a point above, and di-

84 W Va.

rectly over, the barrel, and to this another joint leading down into and near the bottom of the barrel was attached, thus forming an ell. Merrill filled the barrel with water from the tank, and Norris then got some nails and drove them into the tops of the staves, for the purpose of suspending the cans in the water by means of strings tied to the handles of the cans. Up to this time there is no conflict in the testimony.

Norris swears, after the steam was turned into the barrel, that he went up to the wagon, got two cans of nitro-glycerine and carried them down, one in each hand, to the engine house and carefully laid them down on the ground, between the barrel and the water tank; that he put his hand in the water to ascertain whether it was sufficiently heated to thaw the nitro-glycerine, and, finding that it was, told deceased to disconnect the steam pipe, and immediately returned to the wagon to get two more cans; that he was at the upper side of the wagon, facing the engine house, in the act of lifting the cans out when Merrill, who was then at the fly wheel of the engine endeavoring to attach the clamps that hold the reel used to let the measuring line down in the well in order to ascertain its depth, preparatory to lowering the nitro-glycerine into it, asked witness on which side of the clamps the washers were intended to go; that witness replied to him to leave them as they were, and stooped to get an awl out of his tool box, with which to uncork the cans, and just as he raised up the explosion occurred; that the end of the engine house next to the wagon was open and he could plainly see Merrill, but that a corner of the engine house obstructed his view of the barrel and the two cans which he had laid on the ground; that he did not then see McClain, but when he started to the wagon he left him in the act of disconnecting the steam pipe from the barrel with his hands; that he and McClain had connected it with their hands and McClain was endeavoring to disconnect it in the same manner; that it could not have been more than two minutes after he started to the wagon before the explosion occurred; and that he did not put the cans in the barrel nor direct anyone else to do so; and that they were not in it when he started back to the wagon.

On the other hand, Merrill swears he saw the cans in the barrel, just before the explosion, and the steam pipe was still connected and the steam going into the barrel, causing the water to bubble up; that a moment before the explosion, when he was asking Norris about the clamps, deceased was standing on the opposite side of the engine from him, looking into a tool box. Witness Belt, for the plaintiff, says he was at the well just before the accident, passed by the barrel and did not see the cans in it, nor did he see them on the ground. But he says he left five or six minutes before the explosion, and had gone one hundred and fifty or two hundred yards, walking up hill carrying a pretty heavy load, before it occurred. His evidence does not contradict either Merrill or Norris, and has no probative value on the vital question whether the nitro-glycerine was in the barrel or on the ground when it exploded. There was time enough, after he left the engine house, for Norris to bring it from the wagon and either put it in the barrel or lay it on the ground and return to the wagon, which was only fifty or sixty feet away.

A number of witnesses, qualified by their experience in handling nitro-glycerine to speak as experts, say the usual and approved method of thawing frozen nitro-glycerine is to immerse it in water previously heated to 120° to 160°, Fahrenheit; and if Norris' testimony is true he was preparing to thaw it in that manner. All of the experts say it is considered dangerous to thaw it by suspending it in cold water and then heating the water, or by allowing the steam to be discharged, creating a commotion in the water while the nitroglycerine is suspended in it.

A sharp and irreconcilable conflict exists between Norris and Merrill, and counsel for defendant insist that the testimony of the latter is overcome by the physical facts and conditions produced by the explosion, some of which are not disputed. Staves of the barrel, in which the explosion is alleged to have occurred, were sheared off by the force of the explosion, from the second hoop above the bottom, on the side next to the water tank, sloping up to the top on the

opposite side, leaving the bottom apparently intact. This fact, they say, demonstrates the falsity of Merrill's testimony, because expert witnesses express the opinion, that if sixteen quarts of nitro-glycerine had exploded in the barrel, it would have blown the barrel to pieces and torn up the platform upon which it rested. Three or four witnesses for defendant testified concerning an experiment witnessed by them a day or two before the trial. A pound and ten ounces, about a pint, of nitro-glycerine was placed in a can, the can was then suspended in the same kind of a barrel, a common oil barrel, filled to within three inches of the top with water, and set upon a platform, erected out of timbers of the same dimensions as those used in the floor of the engine house, and the nitro-glycerine was exploded by means of a fuse and cap, and they say the barrel was blown to pieces, the timbers in the platform broken up, and only two or three small pieces of the barrel staves could be found. The expert witnesses also give it as their opinion, that nitro-glycerine will not explode automatically or spontaneously, that it must be exploded by some extraneous agency; that the explosion operates with equal force in all directions; and that, in their opinion, the explosion could not have taken place in the barrel, as Merrill says it did, without totally destroying the barrel. But it is not shown that these witnesses ever experimented with frozen nitro-glycerine in a similar manner and under like circumstances to those which Merrill says existed here. If Merrill's testimony is true, the explosion occurred in the barrel, and was caused either by the water becoming too hot, or by the steam creating a commotion in the water and causing the cans to strike against each other or against the side of the barrel, and if it occurred in either way it would show negligence on the part of defendant's agent Norris, for it is proven, and not controverted, that that manner of thawing it is considered dangerous. Merrill says McClain was not at the barrel then, but was in the engine house on the farther side of the engine house from the barrel, and that he himself was at the fly wheel of the engine, on the side next to the barrel. It must be admitted that the physical facts tend to contradict Merrill, but it cannot be said they

are of such conclusive character as to outweigh his positive testimony. The results of an explosion of nitro-glycerine are not always the same and are not matters of such common experience and knowledge as to justify the conclusion, under the circumstances and conditions here shown to exist, that it could not possibly have exploded in the barrel without destroying it entirely. Explosions do not always produce uniform results, and the results produced in this instance were evidential facts for the jury to weigh and consider, along with the testimony of witnesses, and we cannot say they did not give them such probative value as in their judgment was proper. If the explosion did not take place as Merrill says it did, it is not accounted for in any manner shown by the record. For the space of two or three minutes preceding the explosion, according to Norris' testimony, after he laid the two cans down on the ground and returned to the wagon for more, he did not see McClain. Merrill places him farther from the barrel than himself, the instant before the explosion, and they were the only persons near it; and all the expert witnesses, none of whom are contradicted in that respect, say nitro-glycerine will not explode spontaneously. If Norris' testimony is true, the manner in which he says he handled the nitro-glycerine, and was preparing to thaw it, was very careful, according to the opinions of all the expert witnesses including himself, and he has had many years experience and says he has shot hundreds of wells. The jury has passed on the credibility of these two witnesses and has considered the results of the explosion, affecting their credibility, and, in answer to certain interrogatories propounded to it by the court, at the request of defendant, has returned a special verdict, finding that Norris placed the nitro-glycerine in the barrel after he and McClain had connected the steam pipes and before he returned to the wagon; that McClain and Norris made the steam pipe connections and that it believed Norris told deceased to disconnect the pipe, but that it did not know whether deceased had attempted to disconnect the pipe or not, and did not know how far McClain was away from the nitro-glycerine when it exploded, and did not believe the cans were on the ground.

These special findings harmonize with the general verdict, and those questions which the jury were unable to answer are not essential to establish negligence on the part of defendant.

Two witnesses for defendant testify that Merrill, just after he came out of the hospital and before he brought his action against this defendant, said in their presence that he did not know how to account for the accident unless McClain dropped a piece of pipe or a monkey wrench on the cans. Merrill denies making this statement. A copy of the original declaration in Merrill's case was introduced for the purpose of showing that it was framed on a different theory of negligence from that averred in his amended declaration and in the declaration in this action, that the original declaration did not count upon negligence in suspending the cans in the barrel of water and then turning the steam into the barrel, but that it was thereafter amended so as to do so. This apparent inconsistency between Merrill's averments in his original declaration and his testimony is explained by witness Boggess, a member of the firm of Ryan & Boggess, who prepared the declaration. Boggess says Merrill's hearing was so much affected as a result of his injury that it was very difficult to communicate with him, and that he got most of the data from which the declaration was prepared from Merrill's brother. The jury considered all these matters offered to impeach the witness and has determined the facts upon the conflicting oral testimony, and the court has no right to disturb its finding in respect thereto.

Two or three witnesses say the ground seemed to be blown up between the barrel and the water tank, and one of them, O. P. Bergwin, drilling foreman for the Ohio Fuel Oil Company, says he was not present when the explosion occurred, but came there a very short time afterwards on March 30th, and while working around the place stepped in a hole filled with mud and water, between the place where the water tank stood and where the barrel set. But other witnesses, who came on the ground immediately after the explosion, say they did not see any hole, or notice that the ground had been torn up. The boards and timbers of the engine house and

the staves of the water tank were scattered by the force of
the explosion in every direction, only a few of the staves of
the tank, on the side fartherest from the point of the ex-
plosion being left standing. Merrill, in an unconscious con-
dition, and the body of deceased were found on the board-
walk leading from the engine house along by the belt shed
to the derrick, about twenty-five feet from the barrel, Mer-
rill being the fartherest from the barrel. H. H. Robey an
undertaker who prepared the body of deceased for burial,
in describing the condition of his body, says the head, left
side and left arm were mashed, that all the bones of the left
arm were broken and the head mashed into a pulp, but that
the skin was not broken badly and the face was not unrec-
ognizable, and the legs and right arm were intact; that the
left hand was in fair condition, but that, from the wrist up
to the shoulder, the left arm was considerably lacerated. It
is impossible to tell, from the position of the body, just where
McClain was standing, and whether the explosion occurred
in the barrel or on the ground, because the same result might
have been produced by the explosion if it occurred at either
of these points. It is difficult to explain, if McClain was
standing where Merrill says he was, on the opposite side of
the engine, how his body could have been thrown in the same
direction that Merrill was. The jury may have concluded
Merrill was mistaken as to the exact location of deceased at
the instant of the explosion, or that his body might have
been blown against some of the timbers of the shed and its
course thereby deflected. But it is just as difficult to ex-
plain how the same force blew the timbers of the engine
house and staves of the water tank in every direction, a
fact not disputed. But all these are questions of fact for
the jury, and without invading their domain, the court can-
not say their verdict is not supported by the evidence, or
is even against the decided preponderance of the evidence,
and hence, we think, the court properly overruled defend-
ant's motion to set it aside and grant it a new trial.

The giving of eight instructions for the plaintiff and the
refusal to give three for defendant, designated "A", 2 and
13, are complained of. We have carefully considered these

assignments and do not think they show error. Defendant's instruction "A" was a peremptory one. Nos. 2 and 13 relate to assumption of risk by deceased, if the jury should believe he voluntarily, or at Norris' request undertook to assist him in the hazardous work of thawing the nitro-glycerine. One, not a fellow servant, does not assume the risk of injury resulting from the negligence of another, and there was no error in refusing these instructions.

The court refused defendant's request to be permitted to demonstrate to the jury the effect produced by exploding a pint of nitro-glycerine suspended in a barrel of water, and this is assigned as error. This experiment was intended to prove the falsity of Merrill's statement that the explosion took place in the barrel, by demonstrating that the barrel would have been thereby entirely destroyed. When an experiment is offered to be made for such purpose, the rule is that it must be performed under conditions similar to those governing the result to be proved or disproved, 5 Ency. Evid. 483, and the court may have considered it impracticable to reproduce all the former conditions, within a reasonable time and during the progress of the trial. The frozen state of the nitro-glycerine, the steam, forced into the water underneath the cans of nitro-glycerine causing the water to bubble up, may have caused the explosion to produce results variant from those that would have been produced, if it had been exploded in some other manner. The allowance of such experimentation is within the discretion of the trial court. *State* v. *Smith,* 49 Conn. 376; *Polin* v. *State,* (Neb.), 16 N. W. 898; *Leonard* v. *South,* Pac. R. R., 21 Ore. 555; *Lake Erie & W. R. Co.* v. *Muggs,* (Ind.), 31 N. E. 564; *Smith* v. *St. Paul City R. R. Co.,* (Minn.), 18 N. W. 827; and 3 Jones on Evidence, § 410. However, the court permitted witnesses to testify in regard to the results of an experiment made a day or two before the trial, and there was certainly no abuse of discretion in refusing defendant's request to be allowed to repeat the experiment in the presence of the jury somewhere out of court.

This case is controlled by the principles announced in the Merrill Case *supra,* and the judgment will be affirmed.

*Affirmed.*

Miller, President, *(dissenting):*

I am unable to concur in the opinion of the court in this case. The only theory of negligence relied on at the trial was that the cans of glycerine were suspended in the water barrel and the steam negligently turned into the water, resulting in the explosion. The evidence shows that Merrill, the only witness offered to prove this alleged act of negligence, told a different story immediately after the accident, not only to his counsel but to one or two other witnesses, and the original declaration in the case was based on a different theory and a different statement of facts. Afterwards a new or amended declaration was filed. The original theory of the explosion was that McClain was at the water barrel adjusting some steam connections, and had accidentally dropped some tool or piece of pipe on the glycerine lying on the ground near the water barrel where Norris had placed it, causing the explosion. The new theory advanced in the amended declaration and by the evidence of Merrill on the trial was that Norris, who was engaged in assembling the cans at the derrick preparatory to shooting the well, had suspended in the water barrel the first cans brought and negligently turned on the steam and then proceeded to the wagon to bring up the other cans, a most improbable story I think, considering that he was an expert of many years experience in handling glycerine and shooting oil wells. Merrill's evidence on the trial was not only that the cans of glycerine had been so suspended in the barrel, but that McClain at the instant of the explosion was not at the water barrel, as he and Norris both originally agreed, but was at a tool box in the engine room on the side of the engine opposite the place where Merrill was at work.

This new theory that the cans of glycerine were so negligently suspended in the water barrel and that McClain was in the engine room at the time of the explosion, are flatly controverted by Norris, and disproven by every single phys-

ical fact apparent after the explosion and by every law of physical science, as well as by the actual test subsequently made under circumstances as nearly like those existing at the well as it was possible to make them. Little attempt is made in the opinion to reconcile these physical facts with the evidence of Merrill at the trial, except on the theory that strange results are often produced in such cases. It is impossible to account for the condition or position of McClain's body immediately after the accident, on the theory that he was at the place where Merrill located him. The opinion says that the body might have struck some part of the building and glanced off. No facts proven justify such a theory. The condition of the left side of his face and his left arm, bruised and mutilated as they were, can only be accounted for on the theory that McClain was at or near the barrel, where Norris says he was. The great hole in the ground immediately at the place where Norris says he laid the glycerine, the mud on the derrick, the position and condition of McClain's face and arm, the condition of the water barrel and other physical facts appearing immediately after the explosion, all show clearly that the cans of glycerine could not have been in the barrel when the explosion occurred. I would reverse the judgment.