## ELK REFINING CO. v. DANIEL et al.

### No. 6455.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 13, 1952.

Decided Nov. 3, 1952.

Thomas W. Moses, Charleston, W. Va. (Dayton, Campbell & Love, Charleston, W. Va., on brief), for appellant.

Bailey, Worrell & Bailey and R. D. Bailey, Pineville, W. Va., on brief for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from a judgment, without a jury, of the United States District Court for the Southern District of West Virginia, rescinding a lease between Elk Refining Company, lessee, (hereinafter sometimes referred to as Elk), and F. L. Daniel and Emma J. Daniel, lessors and joint owners of the leased property. The action was first brought by the lessors in the Circuit Court of Wyoming County, West Virginia, but was removed to the United States District Court. The rescission was based on an alleged fraudulent misrepresentation by an agent of the appellant company, made at the time the lease in question was executed and operative as a material inducement to the signing of the lease by the appellees. The sole questions on appeal are whether or not the findings of the District Court are supported by sufficient evidence and whether its decision is in accord with the West Virginia law.

Elk is a corporation engaged in the refining and distribution of petroleum products in southern West Virginia. In the fall of 1948 its lease on certain property, upon which a filling station was located, in Pineville, West Virginia, was about to expire and Elk desired to lease other property there for the same purpose. The appellees jointly owned a lot in Pineville, and Emma J. Daniel also owned a lot in Oceana, West Virginia, a small town about 14 miles from Pineville. George Chambers, a representative of Elk, went to see Emma Daniel concerning the possibility of leasing these lots. She conducted a small store in Oceana and all their conversations took place there.

There is considerable conflicting testimony about the nature of these conversations but apparently, on each occasion, the leasing of both lots was discussed and Emma Daniel insisted that she would not lease one without the other. Before any agreement was reached, Chambers negotiated a lease with F. L. Daniel, joint owner of the Pineville lot, in Beckley, West Virginia. F. L. Daniel, however, stated at that time that the lease would have to be satisfactory to his wife, and the District Court found that his signing was conditional upon that occurrence.

After Mr. Daniel had signed, Chambers took the lease of the Pineville lot to Mrs. Daniel for her signature. This lease provided for a monthly rental of $75. The proposed lease of the Oceana lot, as developed from the discussions between Chambers and Mrs. Daniel, would have had a monthly rental of $50. Both leases were to run for ten years, with improvements to belong to the lessors afterward. It appears that at this time Elk had already partly completed the building of a service station on the Pineville lot. Mrs. Daniel testified that Chambers told her that the same procedure would be followed with respect to the Oceana lot and not to worry about the fact that no lease was to be executed then and there for that lot. She stated that on the strength of this assurance that the Oceana lot would be subsequently leased, plus Chambers' promise that her son would operate the Pineville station, she signed the Pineville lease.

Chambers testified, on the other hand, that at no time had he given Mrs. Daniel any definite promise that the Oceana lot would be leased by Elk, but rather had merely told her that the company had such

an idea under consideration. Chambers also denied telling Mrs. Daniel, according to her version, to come to Charleston, West Virginia, and see a filling station there which Elk had built and which would be the type of building the company intended to put on the Oceana lot.

It does appear that throughout the negotiations, Chambers and superior officers of the Elk Refining Company had the Oceana lot under consideration as a gasoline service station, but the evidence indicates that they had no definite intention at any time of leasing it. On the contrary, about seven months after signing the Pineville lease, Elk leased a lot in Oceana from a third party and proceeded to conduct a service station there. A lease for the Daniels' lot in Oceana was never executed.

With respect to the above evidence, the District Court found that Chambers made a definite promise to Mrs. Daniel that his company would lease the Oceana lot, that this promise was made for the purpose of procuring her signature to the Pineville lease, and that she relied on this promise, as well as Chambers' other statements, and would not have signed the Pineville lease had it not been given. The District Court further found that this promise amounted to a representation of definite intention when Chambers knew that his company had no such intention but was only considering the matter. We think the evidence adequately supports these findings.

There is no question but that Mrs. Daniel wanted to lease the Oceana lot and that Chambers was aware of this desire. The presence of the station in Oceana would certainly enhance the business of her store on the adjoining lot, and the evidence indicates that she was actually more interested in leasing the Oceana lot than the one in Pineville. The fact that she wanted to lease tnem both, or none at all, is amply corroborated by the testimony, especially that of the women clerks at her store. In the face of this stubborn resolve, nothing else could have induced her to sign the Pineville lease other than an assurance that the Oceana lease would not be far behind. Chambers, of course, made other concessions, such as giving her son a position as operator of the Pineville station, but it appears without a doubt that the Oceana lure was the major inducement. The fact that a filling station was already going up at Pineville would in itself be immaterial to her, but not so a promise that the same thing would happen at Oceana. A finding that such a promise was given cannot, in any light, be considered as clearly erroneous.

It is equally apparent that the Elk Refining Company had no such definite intention as its agent Chambers represented. The District Court found that the company had no intention not to lease the Oceana lot, but was merely in the intermediate position of considering the idea. The presence or lack of a positive intention at any time is a factor of a state of mind, and a misstatement of that mental position is a false representation of an existing fact. Cottrell v. Nurnberger, 131 W.Va. 391, 47 S.E.2d 454, 5 A.L.R.2d 1298; Dyke v. Alleman, 130 W.Va. 519, 44 S.E.2d 587; Davis v. Alford, 113 W.Va. 30, 166 S.E. 701; Martin v. South Bluefield Land Co., 81 W.Va. 62, 94 S.E. 493.

The appellant contends, however, that the requisite elements of a false representation are not present here, because there was no definite intention in Chambers' mind not to perform his promise subsequently, but merely an absence of a positive intent to perform. Such a distinction seems hypertechnical and has not been recognized by the West Virginia courts. In Davis v. Alford, 113 W.Va. 30, 166 S.E. 701, the Supreme Court of Appeals of West Virginia laid down the test for a false representation. There must be a false promise, made without intention of performance, for the fraudulent purpose of putting the promisor in an advantageous position at the expense of the promisee, and acted upon by the promisee to his detriment. Whether there is simply a lack of any intent at all on the part of the promisor, or a positive resolve not to perform, seems immaterial under the rule of this case. The fact that the promisor does not intend what he says he does is a deceiving element in either event.

Cottrell v. Nurnberger, 131 W.Va. 391, 47 S.E.2d 454, 5 A.L.R.2d 1298, relied up-

on by the appellant, states nothing to the contrary. There the promises were deemed to relate merely to future action, not to an indication of a present state of mind. There is unquestionably a wide difference between an oral promise of future performance, unenforceable in itself under the Statute of Frauds, and the operative inducement of such a promise upon the making of an enforceable contract. The promise itself may not be enforceable, but if it amounts to a representation of present mental intention, its falseness may be the basis for rescission of the contract it induces.

■ The burden of proving fraud is unquestionably heavy, Hunt v. Hunt, Trustee, 91 W.Va. 685, 114 S.E. 283, and it is also well established that one cannot rely blindly upon a representation without suitable investigation and reasonable basis. Buena Vista Co. v. Billmyer, 48 W.Va. 382, 37 S.E. 583. But it is clear that the instant facts met all the requisites of false representation under West Virginia law, and that the appellees are entitled to have the Pineville lease rescinded.

The judgment of the District Court granting rescission, conditioned upon payment to the appellant of that proportion of the total cost of improvements which the unexpired term of the lease bears to the total term, will, accordingly, be affirmed.

Affirmed.