391 S.E.2d 907

**TRI–STATE ASPHALT PRODUCTS, INC.**

**v.**

**McDONOUGH COMPANY.**

**No. 18990.**

Supreme Court of Appeals of West Virginia.

April 13, 1990.

758

Richard A. Bush, Bush & Trippel, Parkersburg, for Tri–State Asphalt Products, Inc.

Robert W. Full, Goodwin & Goodwin, Parkersburg, Eric P. Reif, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for McDonough Co.

PER CURIAM.

The appellant, Tri–State Asphalt Products, Inc., appeals a final order of the Circuit Court of Wood County dated October 16, 1987, which denied the appellant's motion for a new trial. The appellant contends that the circuit court erred in: (1) refusing to permit the appellant to introduce into evidence a photograph of one of the aggregate stockpiles; (2) refusing to allow the appellant's accountant to testify regarding the manner in which workers' compensation benefits were reflected on the accounting balance sheets; (3) finding as a matter of law that the supplemental agreement between the parties was ambiguous on its face; and (4) granting a directed verdict in favor of the appellee, McDonough Company, on the issues of fraud and punitive damages. We find no reversible error and accordingly, the order of the circuit court is affirmed.

On September 12, 1980, the parties entered into a written contract for the purchase and sale of the assets of Ohio River Sand and Gravel. The parties subsequently executed a supplemental agreement on December 29, 1980, the same day on which the closing took place.

On March 12, 1981, the appellant filed a complaint against the appellee in which the appellant alleged, among other things, that it had suffered damages because: (1) the stock piles of inventory purchased from the appellee "contained hidden and concealed cores of useless fill material and dirt" which the appellee failed to disclose; (2) the appellee refused to deliver certain workers' compensation deposits; and (3) the appellee failed to pay accrued hourly vacations. The appellant requested that a judgment be entered against the appellee in the amount of $473,409.57 for compensatory damages and $500,000.00 for punitive damages.

On May 12, 1981, the appellee filed its answer and counterclaim. In its counterclaim, the appellee asserted that certain

adjustments were to be made between the parties to reflect prorations as of the closing for real estate and property taxes, unemployment compensation taxes and insurance, payroll expenses, rental expenses and similar items. The appellee contended that as a result of these contractual provisions, the appellant owed it the sum of $25,036.98. Furthermore, the appellee maintained that the appellant owed it an account receivable in the sum of $6,489.53.

The trial began on June 23, 1987. At the conclusion of the appellant's evidence, the trial judge entered a directed verdict in favor of the appellee on the issues of fraud and punitive damages. At the conclusion of all the evidence, the jury returned verdicts in favor of the appellee on the issues of the workers' compensation deposits and the accrued vacation pay.

The appellant filed a motion for a new trial on July 22, 1987. Following a hearing on that motion, the circuit court entered an order on January 19, 1988, denying the appellant's motion for a new trial. It is from that order that the appellant appeals.

I

The appellant first contends that the circuit court erred in refusing to permit it to introduce into evidence a photograph of one of the aggregate stockpiles. The appellee asserts that the court's refusal to allow the photograph into evidence was not error and that the circuit court is vested with broad discretion in determining the admissibility of photographs.

 This Court recognized in syllabus point 1 of *Thrasher v. Amere Gas Utilities Co.*, 138 W.Va. 166, 75 S.E.2d 376 (1953), appeal dismissed, 347 U.S. 910, 74 S.Ct. 478, 98 L.Ed. 1067 (1954) that whether a particular photograph should be admitted in evidence rests in the sound discretion of the trial court:

As a general rule photographs of persons, things, and places, when duly verified and shown by extrinsic evidence to be faithful representations of the objects they purport to portray, are admissible in evidence as aids to the jury in understanding the evidence; and whether a particular photograph or groups of photographs should be admitted in evidence rests in the sound discretion of the trial court and its ruling on the question of the admissibility of such evidence will be upheld unless it clearly appears that its discretion has been abused.

 In the instant case, the photograph was a picture of a golf ball placed beside a hole revealing the interior of one of the aggregate stockpiles. The purpose of the photograph was to show the contrast in color between the sand on the exterior of the pile and the sand on the interior of the pile.[1]

Yet, even if the photograph were admissible, we do not find it to be a crucial piece of evidence since several witnesses testified concerning the condition of the stockpiles. *See West Virginia Dep't of Highways v. Delta Concrete Co.*, 165 W.Va. 398, 401, 268 S.E.2d 124, 127 (1980); syl. pt. 3, *Elswick v. Charleston Transit Co.*, 128 W.Va. 241, 36 S.E.2d 419 (1945). Therefore, the exclusion of this photograph by the trial judge did not constitute an abuse of discretion.

II

 The appellant next asserts that it was error for the trial court to exclude the testimony of the appellant's accountant regarding the manner in which the workers' compensation deposits were reflected on the appellee's financial statements since those statements were not produced at trial. The appellee contends that the appellant's witness, Harold S. Skinner, did testify concerning the location of the workers'

---

1. The trial judge ruled that the photograph was an experiment that was specifically conducted for purposes of evidence in the proceeding and was not merely a photograph of the scene. Although it does not appear that this photograph qualifies as an experiment or test, the admissibility of tests or experiments in evidence is also within the sound discretion of the trial court. *See Spurlin v. Nardo*, 145 W.Va. 408, 114 S.E.2d 913 (1960); *McClain v. Marietta Torpedo Co.*, 84 W.Va. 139, 100 S.E. 87 (1919); *Bond v. National Fire Ins. Co.*, 77 W.Va. 736, 88 S.E. 389 (1916).

compensation deposits on the balance sheets.

The appellant did not produce either the original or a copy of the balance sheets at trial.[2] When the appellee objected to the testimony of the appellant's accountant, Lawrence Dennis Priebe, regarding the location of the workers' compensation deposits on the balance sheets, the trial judge sustained the objection on the ground that the balance sheets would be the best evidence under Rule 1002 of the *West Virginia Rules of Evidence*.[3] The appellant did not respond to the objection nor was any attempt made to vouch the record concerning the balance sheets or the use of Mr. Priebe's testimony as secondary evidence in place of those records.

We stated in syllabus point 1 of *Horton v. Horton*, 164 W.Va. 358, 264 S.E.2d 160 (1980):

If a party offers evidence to which an objection is sustained, that party, in order to preserve the rejection of the evidence as error on appeal, must place the rejected evidence on the record or disclose what the evidence would have shown, and the failure to do so prevents an appellate court from reviewing the matter on appeal.

Thus, the appellant's failure to make a proper offer of proof prevents us from reviewing this assignment of error.[4]

### III

The appellant also asserts that the trial court erred in finding as a matter of law that the supplemental agreement was ambiguous on its face, and in allowing the testimony of Joseph M. Brown in violation of the parol evidence rule. The appellee maintains that Mr. Brown's testimony was offered merely to show that the appellee had complied with the terms of that agreement.

The parol evidence rule was stated by this Court in syllabus point 1 of *Kanawha Banking & Trust Company v. Gilbert*, 131 W.Va. 88, 46 S.E.2d 225 (1947):

Extrinsic evidence of statements and declarations of the parties to an unambiguous written contract occurring contemporaneously with or prior to its execution is inadmissible to contradict, add to, detract from, vary or explain the terms of such contract, in the absence of a showing of illegality, fraud, duress, mistake or insufficiency of the consideration.

*See also* syl. pt. 1, *North American Royal Coal Co. v. Mountaineer Developers, Inc.*, 161 W.Va. 37, 239 S.E.2d 673 (1977). Prior or contemporaneous parol statements, however, may be admitted to explain uncertain, incomplete or ambiguous contract terms. *Glenmark Associates, Inc. v. Americare of West Virginia, Inc.*, 179 W.Va. 632, 371

---

2. Mr. Skinner testified that he had conducted a search for the balance sheets in their offices located in Wheeling, West Virginia and Railing, Ohio. Mr. Skinner testified, however, that he did receive copies of "a year's worth" of the appellee's balance sheets but could not recall where those copies were located.

3. Rule 1002 provides: "To prove the content of a writing, recording or photograph, the original writing, recording or photograph is required, except as otherwise provided in these rules or by statute."

4. We note that the trial judge did allow Harold S. Skinner to testify that the workers' compensation deposits were placed under the noncurrent assets on the balance sheets. From this evidence, therefore, we find the appellant's point of error that Mr. Skinner was not allowed to testify regarding the location of the deposits on the balance sheets to be without merit.

2. Rule 1004 of the *West Virginia Rules of Evidence* provides:

The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if—
(1) *Originals Lost or Destroyed.*—All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; or
(2) *Original not Obtainable.*—No original can be obtained by any available judicial process or procedure; or
(3) *Original in Possession of Opponent.*—At a time when an original was under the control of the party against whom offered he was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing, and he does not produce the original at the hearing; or
(4) *Collateral Matters.*—The writing, recording, or photograph is not closely related to a controlling issue.

S.E.2d 353 (1988); *Holiday Plaza, Inc. v. First Federal Savings & Loan Ass'n of Clarksburg*, 168 W.Va. 356, 285 S.E.2d 131 (1981); *International Nickel Co. v. Commonwealth Gas Corp.*, 152 W.Va. 296, 163 S.E.2d 677 (1968); *Berkeley County Public Service Dist. v. Vitro Corp. of America*, 152 W.Va. 252, 162 S.E.2d 189 (1968).

The appellant's assignment of error on this issue fails for two reasons. First, the trial judge did not find as a matter of law that the supplemental agreement was ambiguous. When the appellee questioned Mr. Brown regarding whether any adjustments were made to the purchase price at the time of closing to pay for accrued vacations, the appellant objected on the basis of the parol evidence rule. The trial judge overruled the objection but made no ruling that the supplemental agreement was ambiguous on its face.

Second, Mr. Brown was not attempting to explain the terms of the supplemental agreement.[5] Instead, Mr. Brown was merely testifying that the appellee had complied with the agreement by deducting $50,000 from the contract price.[6] Accordingly, we find that the trial court did not err in allowing Mr. Brown's testimony.

IV

Finally, the appellant contends that the trial court erred in granting a directed verdict in favor of the appellee on the issues of fraud and punitive damages. The appellee asserts that there was no reasonable inference fairly arising from all of the evidence, even viewed in the light most favorable to the appellant, to support the appellant's theory of fraud, and that since the claim of fraud was properly rejected by the trial court, the claim for punitive damages must also fail.

This Court enumerated the elements of fraud in syllabus point 1 of *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981):

The essential elements in an action for fraud are: '(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it.' *Horton v. Tyree*, 104 W.Va. 238, 242, 139 S.E. 737 [738] (1927).

*See Rockley Manor v. Strimbeck*, 181 W.Va. 313, 382 S.E.2d 507 (1989); *Muzelak v. King Chevrolet, Inc.*, 179 W.Va. 340, 368 S.E.2d 710 (1988); *Romano v. New England Mutual Life Ins. Co.*, 178 W.Va. 523, 362 S.E.2d 334 (1987).

We stated the standard of proof for fraud in syllabus point 5 of *Calhoun County Bank v. Ellison*, 133 W.Va. 9, 54 S.E.2d 182 (1949): "Allegations of fraud, when denied by proper pleading, must be established by clear and convincing proof."

Furthermore, in a case interpreting West Virginia law on the issue of fraud, *Elk Refining Co. v. Daniel*, 199 F.2d 479, 482 (4th Cir.1952), the Fourth Circuit of the United States Court of Appeals recognized: " 'The burden of proving fraud is unquestionably heavy, *Hunt v. Hunt, Trustee*, 91 W.Va. 685, 114 S.E. 283, and it is also well established that one cannot rely blindly upon a representation without suitable investigation and reasonable basis. *Buena Vista Co. v. Billmyer*, 48 W.Va. 382, 37 S.E. 583.' "

Finally, this Court also recognized in syllabus point 6 of *Jones v. McComas*, 92 W.Va. 596, 115 S.E. 456 (1922):

And where both parties to a contract have equal means and opportunity to acquire information, so that by ordinary

5. The supplemental agreement provides, in part: "Seller shall be responsible for the payment of salaries and wages to the employees of Ohio River Sand & Gravel, a division of McDonough Co., through December 23, 1980, and shall pay all accrued vacation pay due to said hourly employees through December 31, 1980."

6. Mr. Brown testified that a "$50,000 agreement was struck" between the parties at the closing to compensate for any accrued hourly wages and vacations. Mr. Brown further testified that the accrued vacation adjustment was reflected on the closing statement as the adjustment of "12/29."

diligence either may rely on his own judgment, they will be presumed to have done so, and if not, they must abide by the consequences of their own folly or carelessness.

█ Glenn Straub, president of Tri–State Asphalt Products, Inc., testified that he had some experience in the production of sand and gravel as a result of his acquisition of Spring Industries. Yet, when he negotiated the purchase of Ohio River Sand & Gravel, Mr. Straub never inquired as to whether there were any contaminants in the aggregate stockpiles nor did he investigate or examine the aggregate stockpiles. Instead, Mr. Straub relied on the reputation of the appellee as a "Class I supplier." The trial judge found that the appellee tried to make available to the appellant any and all information the appellant wanted, and that the appellant had the opportunity to examine and test the aggregate stockpiles prior to the closing date. The trial judge found that "not only is there no evidence of fraud, misrepresentation, but there is no evidence of concealment."

█ In syllabus point 1 of *Jenkins v. Chatterton*, 143 W.Va. 250, 100 S.E.2d 808 (1957):

'Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence.' Syllabus, *Nichols v. Raleigh–Wyoming Coal Co.*, 112 W.Va. 85, 163 S.E. 767.

7. For a comprehensive discussion of the origin of punitive damages see *Wells v. Smith*, 171

*See also* syllabus point 1, *Jividen v. Leg*, 161 W.Va. 769, 245 S.E.2d 835 (1978).

Even if the evidence is viewed in the light most favorable to the appellant, it appears from the record that the contaminants contained in the aggregate stockpiles would have been uncovered if the appellant had exercised reasonable care and inspected this inventory prior to the closing date. There is no evidence to indicate that the appellee did anything to prevent the appellant from inspecting the stockpiles or to intentionally conceal the conditions of those stockpiles.

█ Finally, with respect to the issue of punitive damages, this Court recognized in syllabus point 5 of *Bennett v. 3 C Coal Company*, 180 W.Va. 665, 379 S.E.2d 388 (1989): "In order to secure punitive damages, a defendant must be shown to have engaged in a wilful, wanton, reckless, or malicious act." [7] Since there was no showing that the appellee engaged in any wilful, wanton, reckless, or malicious act, we find no merit in the appellant's assertion that the issue of punitive damages should have gone to the jury. Accordingly, we find that the trial court properly granted a directed verdict in favor of the appellee on the issues of fraud and punitive damages.

Accordingly, for the reasons set forth herein, we find that the judgment of the trial court should be affirmed.

Affirmed.