Staples, J.
This is a controversy between Howe,. Knox & Co., as attaching creditors of Samuel Strong-on the one hand,- and Ould & Carrington on the other,. claiming to be purchasers and endorsees for value of a nei=otiable note executed by Myers to Strong. The plaintiffs’ attachment was served on Myers on the 81st' of May 1866. On the 8th of June 1866, Ould & Carrington purchased the note from Strong. They, however, did not then acquire possession of the note, as at that time, and at the time of the service of the attachment, it was held by the First National Bank as collateral security for a debt of about four thousand dollars, which Strong had owed the bank. Strong, however, gave Ould & Carrington an order on the bank for the note, which was on the same day presented or delivered to an officer of the bank. Mr. Ould, by whom the nóte was so presented, was then-informed that the president was out of town. Some-days thereafter, in an interview between that officer- and Mr. Ould, the former told the latter, that the debt for which the note was pledged was nearly paid off, and that he would deliver up the note, but for the service of an attachment on the bank. It seems that this. latter statement was founded on a misapprehension, and that in fact in this case no attachment was ever-served on the bank. The balance of the debt for-which the note was pledged has been long since paid, and the bank asserts no claim to the note.
It is conceded that Ould & Carrington are bona fidepurchasers of the note for value; that they made the purchase without notice of the' attachment issued or served upon Myers, or the bank; and it is fair to presume they did not acquire such notice until the interview with the president of the bank; which was several days after the first presentation of the order *7 to an officer of that institution. It must be admitted that this is a strong equity in favor of Ould & Carrington. It is insisted, however, that this is not sufficient. In order to defeat the lien of the attachment, they must have something more: they must, it is said, have the legal title as endorsees for value. This ground, it is contended, they do not occupy; because at the time of the purchase, no delivery was made to them. They did not and could not even obtain control of the note, as it was then in possession of the bank as collateral security for a debt. How it may be conceded as well settled under the law merchant, that delivery is absolutely essential to the transfer by endorsement of negotiable paper. The authorities leave no room for doubt or controversy on this point. The cases are, however, not agreed in respect to the acts necessary to constitute a delivery, notwithstanding an occasional obiter opinion to the contrary, it is very clear that an actual manual delivery is not absolutely essential to a title by endorsement. “ Holder is a general word applied to any one in actual or constructive possession of the bill, and entitled at law to recover or receive its contents. This is the rule as laid down in Byles on Bills. In a note to the same authority it is said, “It is conceived that if an agent, a banker for example, hold a bill transferable by delivery, a direction given to him by the owner to hold it for another, it is a sufficient transfer by delivery.” Sixth edition, page 285.
Here the note was endorsed in blank by Strong, and was transferable by delivery. A written direction was given by Strong to the bank to deliver it to Ould & Carrington; and notwithstanding a small balance of the debt for which the note was pledged, was still due, the bank was perfectly willing to surrender the note *8 *° ®uld ^ Carrington, and would have done so but for the supposed existence of the attachments. We have the right to infer at least that such was the ^aet- The president of the bank so stated, and the correctness of that statement was never denied or questioned by the bank or its officers or attorneys. The amount due the bank was at the time insignifinant and +v»q+ TT7QO orvmiTT oannitflii There is no ques-cant, and that was amply secured, tion therefore, no just reason to doubt, that the bank was wiling to surrender the note to Ould & Carrington, as stated by the president.
In Edwards on Bailments, page 225, the author lays it down “ that the pawner retains the right to negotiate or collect the note provided he discharge the lien of the pledge before judgment; he may transfer the note to a third person, who may maintain an action on it as evidence in Ms own name ”
This language is directly applicable to the present case, and the doctrine is fully sustained by the authorities.
The case of Fisher v. Bradford, 7 Greenl. R. 28, in many of its features bears a strong resemblance to the case in hand. There the note had been pledged as collateral security to a bank, and it was insisted, whilst so held, it could not be negotiated to a third person, so as to give him a right of action in his own name. In answer to this objection, Weston, Judge, said: “The bank had a special property, which, accompanied as it was by possession of the instrument, would have justified and enabled it to sue and recover thereon. But the general owner may sue, although liable to be defeated in his action if the bank, not being otherwise satisfied, thought proper to retain the note to its own use. And so may any other person, authorized to sue by the general owner, be subject to the same contingency. *9 The arrangements between the bank and the payee afford no defence to the maker. The pledge having been given up, it is as to him as if it had never existed. He is not liable to the bank; and when he has paid and satisfied the plaintiff!, he is completely discharged from the note; and no one who is or ever was interested in it can have any cause of complaint.”
The case of Richardson v. Lincoln, 5 Metc. R. 201, sustains the same doctrine of a constructive delivery. There Chief Justice Shaw, who it will be agreed is .good authority, said: “In this case the note-was in the keeping of Mr. Williams, as the attorney of the promisee, and he was then his agent. But when Richardson, the promisee, negotiated the note to his daughter, and left it in Mr. Williams’ custody for her use, he thereby consented to hold it for her, and became her agent, and brought an action on it in her name, which she sanctioned by original order •or subsequent ratification. This is abundant proof of actual transfer and. constructive delivery, and makes her holder and endorsee of the note, although she never saw it.” And in another place the learned •chief justice says: “A constructive delivery is sufficient; and even in case of the sale of goods deposited in the hands of a third person, a contract of sale, with -an order on the depositary to deliver them to the vendee, is a good constructive delivery.
In Mitchell v. Byrne, 6 Rich. R. 171, the controversy was between attaching creditors on the one hand, and certain plaintiffs claiming to be holders of the bill- for value on the other. The important question was to determine when the plaintiffs became such holders. The bills had been mailed to the plaintiffs, but had not reached them on the day of levying the attachment, the 5th December 1850. The supreme court of South *10 Carolina held, that so soon as the bills were mailed to-the plaintiffs they became the owners thereof, with immediate right of action thereon; and that it was not necessary that the plaintiff, at the time of commencing his action, should have the possession of the bill. It is sufficient that he is the owner.
If in that case the court, at the instance of the attaching creditors, had interfered and prevented the plaintiffs getting possession, it can hardly be supposed that this act would defeat a title previously acquired. If by the mailing the plaintiffs become the owners* then no act of a third person could defeat the rights thus acquired. The case of the King v. Lambton et als., 5 Price 428, 444, 2 Eng. Exch. R. 276, affirms the same-doctrine as the South Carolina decision.
The case of Lysaght v. Bryant, 67 Eng. C. L. R. 46, is, perhaps, a stronger authority upon the same subject. There Lysaght & Smithell carried on business in partnership. Being indebted to Lysaght, the elder, one of the firm, who acted as agent of the creditor, with the concurrence of his partner, endorsed a bill of exchange in- the name of the firm, and placed it amongst the securities which he held for the creditor; but the fact was never communicated to the creditor. He was not informed either of the indorsement or of the deposit of the bill among securities held for his benefit; and yet it was decided that this was a good endorsement by the firm to the creditor. This decision was made by the unanimous opinion of the judges of the common pleas.
Humerous decisions in reference to deeds show the reluctance of the courts to permit mere technicalities with respect to delivery to defeat the intent of the parties, and the manifest justice of the case. Thus in Hedge v. Drew, 12 Pick. R. 141, it was held that a de *11 livery of the deed by a father to a third person for the use of a daughter, and her subsequent assent to it, was a good delivery to pass real estate.
In Dargan v. Richardson, 1 Cheves’ Law R. 197, the plaintiff, as security for one Long, had paid money on his account. Long being about to leave the state, addressed a letter to the plaintiff making an assignment to him of all his goods as an indemnity. After the date of the letter, but before it reached the plaintiff', attachments were levied upon the goods. It was held that the assignment was good against the attaching creditors.
And in Hutchison & wife v. Rust, 2 Gratt. R. 394, the deed was acknowledged before a justice, but retained in the possession of the grantor. And yet this court held it a good delivery, it being manifest that the grantor intended to hold it for the benefit of the grantee. According to all the authorities the delivery of a deed is complete when the grantor has parted with his dominion over it, with intent it shall pass to the grantee, if the latter assents to it by himself or his agent. I do not say there is a perfect analogy between deeds and negotiable instruments. But as between the endorsee for value, or one claiming to be such, and a third person, asserting a mere statutory lien, substantially the same rules should apply to both classes of instruments.
The transfer of negotiable paper is not by force of any statute, but is regulated purely by usage, and that usage is founded on convenience. The reasons, or one of the reasons for requiring the delivery of such securities in order to confer a perfect title, is that it would ■ be very inconvenient to separate the evidence of ownership from the bill or note itself. The maker, upon paying the same, has the right to demand the sur *12 render of the bill or note, for his own protection. Otherwise he could never pay with entire safety. Besides he would never know whom to pay where the possession is separate from the title. It will thus be seen that one ground of the rule is the security of the maker. Another is the unrestricted circulation of such paper, so that the bona fide holder for value may be secure in his title and his possession. These rules of the law merchant requiring delivery are of course moulded to suit the convenience and necessities of mankind. When the reason for requiring actual delivery ceases, the rule no longer applies. If, for examr ple, the note is in possession of one as an agent or attorney, who acknowledges the title of another, the owner may negotiate it as effectually as though he had the actual possession, and the transferree will acquire a perfect title although he may never see the note. No one will contend that in such case a loss of the note by robbery, or by fire, or even by the adverse claim of another, would defeat the title of the transferee. It is his note that is stolen, or destroyed, and not that of the seller. Whether, therefore, the purchaser or endorsee has acquired such possession, actual or constructive, as is sufficient for all the purposes of the transfer, must always depend upon the particular circumstances of each ease.
If, in the ease before us, Strong had gone with Ould & Carrington to the bank and requested the latter to hold the note for the benefit of the former, the note would have been fully negotiated. There is no doubt but the owner may pledge the bill or note, and then negotiate it, subject only to the lien of the pledge. The transferree must of course have the possession or control of .the paper when payment is demanded or a recovery is had. As already stated the bank asserted *13 no claim to the note at the time; it recognized the CT transfer and the title of the purchaser. So that the case presented is one in which the pledgee so far asserting a lien waives it in favor of the endorsee. How then does the mere existence of an attachment prevent the operation of these principles of law. It certainly cannot affect the result as between Ould & Carrington and the maker. The latter cannot complain. By the terms of his contract he is answerable to the payee or to his order, and according to its legal effect to the order of any other holder. His obligation is to pay the holder, whoever he may be, at the maturity of the note in 1876. Besides, the maker has had his day in court, and is no longer concerned in the decision. The transfer of title is complete as to him, as to Strong, and as to the bank, and was so complete on the 8th June 1866, the day of the transfer. If the transaction between these parties on that day was compíete, leaving nothing to be done as between them to vest the title, the existence of the attachment could not affect the title unless Ould & Carrington at that time had notice of it. They would have obtained actual possession of the note long ago but for the interference of the court at the instance of the attaching creditor. In determining the rights of the parties, however, one must look not to what has since occurred, but to the facts as they existed on the day the transfer was made, and the bank notified. The attaching creditors cannot by invoking the aid of the court to wrest the note from the bank, and thus prevent its recovery by the endorsee, change the rights and obligations of the parties as they previously existed. My opinion therefore, is, that Ould & Carrington were, on the 8th of June 1866, endorsees for value without notice of the attachment. However *14 much we may differ upon this point, we are all agreed that if they occupy that position they are entitled to the note as against the lien of the attachment. By the law of the instrument, by the terms of the contract, the person in possession of the note at the time of its maturity, is entitled to the payment. This is the obligation of the maker. This he is bound to do, and he is not required to do more. The suing out and service of an attachment cannot change these results.
Another interesting and important question was discussed at the bar with much learning and ability; and that is, whether a negotiable note, whilst it is still current, is properly the subject of levy by attachment at all. It is unnecessary to express any opinion upon this question. If we should hold that it is not, such a decision would of course be fatal to the pretension of the attaching creditors. If we should hold, on the other hand, that such a note may be the subject of attachment and process of garnishment, the result would be the same, inasmuch as Ould & Carrington being endorsees for value had title paramount to that acquired by the levy.
Bartlett & Robbins, v. Strong et als.
Staples, J.
This case is substantially the same as the preceding one. Here the attachment was issued on the 30th May 1866, and served on Myers on the 31st of that month, but it was never served on the bank. The second attachment was issued on the 13th of June 1866, and served on the bank on the same day, but never served on Myers. If the plaintiffs rely upon the first attachment, they occupy the precise position of the creditors in the preceding case. If they rely on *15 the second, both attachment and levy are subsequent to the transfer to Ould & Carrington, and of course confer no lien or title. If we consider both attachments together, and give the plaintiffs the benefit of the levy on the bank, it was after the purchase by Ould ■& Carrington, and of course could not affect any rights previously acquired. Whether service on the bank before the transfer would have had such effect, it is unnecessary now to inquire. I think this case must take the same course as the other.
Judgments appirmed.