# CHARLESTON.

ARTHUR L. FOREMAN *v.* MAUDE L. ROUSH *et al.*

Submitted October 26, 1920.    Decided November 23, 1920.

· 1.   DEEDS—*Deed Executed by Grantor With Intent to Pass His Estate Amounts to a Delivery.*

   It is not necessary to the validity of a deed that actual manual delivery thereof be made by the grantor to the grantee. Delivery is in many cases a matter of intention, and where it appears that the grantor executed the deed with the intent, purpose and desire that the same be effective as a conveyance of his estate, it will be held to have been delivered.   (p. 348).

2.   SAME—*Grantor's Rentention Raises Presumption of Non-Delivery; Deed Retained by Grantor Ineffective.*

   The fact that an unrecorded deed is found among the private papers of the grantor, at his death, more than two years after the execution thereof, raises the presumption that such deed was never delivered to the grantee, and was never intended to pass the grantor's title, and when this presumption is strengthened by the conduct of the parties, consisting of the grantor retaining possession of the land until his death, conveying it away shortly before his death to another party, receiving all of the issues and profits arising from the land during the intervening time, selling the personal property conveyed by the deed with the full knowledge of the grantee, and appropriating to his own use the proceeds of such sale; and of the grantee never assuming any charge of such property, charging and receiving compensation from the grantor for work done upon the land, the same being a farm, never making any claim before or at the time of the death of the grantor that he was the owner of the land under such deed, and never paying or offering to pay the consideration required to be paid by him by the terms of such deed, the same will not be effective to pass title to the grantee named therein.   (p. 348).

(WILLIAMS, PRESIDENT, absent).

87 W. Va.

Appeal from Circuit Court, Mason County.

Suit by Arthur L. Foreman against Maude L. Roush and others. Decree for plaintiff, and defendants Maude L. Roush and others appeal.

           *Reversed; bill dismissed.*

*Rankin Wiley, W. L. Poling, S. P. Bell,* and *John E. Beller,* for appellants.

*Somerville & Somerville,* for appellee.

RITZ, JUDGE:

This appeal brings up for review a decree of the circuit court of Mason county establishing a deed made by E. W. Foreman in his lifetime to the plaintiff as valid and binding, and directing that the same be recorded; and setting aside a deed made by said E. W. Foreman to the defendant Maude L. Roush, as a cloud upon the title of the plaintiff.

E. W. Foreman was the father of the plaintiff and the defendant Maude L. Roush. In the month of December, 1914, the said E. W. Foreman anticipated that a suit would be brought against the members of the board of education, he being one of them, to hold them personally liable for an alleged illegal contract made by that board. One of the other members had left the state, and the other was insolvent, so that in case of any recovery Foreman would be compelled to pay the whole of it. He owned a tract of land containing about 71 acres on which he resided, and consulted with some of his acquaintances as to how he could divest himself of title thereto so as to avoid having the same subjected to the satisfaction of any judgment that might be rendered against him as a member of such board of education. He finally determined that he would convey this land to his son, the plaintiff Arthur L. Foreman, for the consideration that his son would support him during his life and pay to the defendant Mrs. Roush the sum of five hundred dollars, and to another son the sum of five hundred dollars, and his lawful indebtedness. On the 25th of December, 1914, he made a deed by which the land was conveyed to Arthur L. Forman for the above consideration. At the time he came to this conclusion the plaintiff was living

in the city of Columbus, Ohio, engaged in working at his trade as a stone mason. It is shown that on the 23d of December he received a letter from his father asking him to come to Mason county at once, as he had some important business to transact with him. The plaintiff came to his father's home on the next day, and on the 25th of December this deed .was made, executed, acknowledged, and immediately recorded. In a few days thereafter E. W. Foreman, upon consideration, came to the conclusion that this deed would not accomplish the purpose which he had in mind; that the provision in it requiring the grantee to pay all of his lawful debts would make him liable for any judgment which might be obtained against him as a member of the board of education, and defeat the very purpose for which he had made the deed. After consulting with some friends he determined that he would have the plaintiff make a deed conveying the property back to him, and then make another deed conveying it to the plaintiff, and limiting the debts which he was to pay by specifying them in the deed. With this view he had a deed prepared dated the 31st of December, 1914, by which he conveyed this same real estate, including all of his personal property to the plaintiff, in consideration that the plaintiff would support him during his life, would pay to Mrs. Roush and another son the sum of five hundred dollars each, and pay to J. W. Roush two notes aggregating the sum of one hundred and fifty dollars. This deed was prepared on the 31st of December, 1914, and was on that day signed and acknowledged by the grantor. At the same time he had the notary prepare a deed from Arthur L. Foreman and wife conveying the real estate and personal property to him, the understanding being that the said Arthur L. Foreman and his wife would sign and acknowledge this deed and revest the title in E. W. Foreman, whereupon the deed of December 31st, above referred to, would be delivered and pass the same back to Arthur L. Foreman, subject only to the payment of one hundred and fifty dollars of debts instead of all of his lawful debts, as mentioned in the first deed. The plaintiff Arthur L. Foreman was at the home of his father E. W. Foreman at the time of the preparation of these papers, and

his family arrived there about that time, or very shortly there-
after. The deed reconveying the property to his father was
not executed at that time. The notary lived some mile and a
half or two miles from the residence of E. W. Foreman, and
the excuse is offered that because of the bad weather the plain-
tiff and his wife did not go to the residence of the notary to
execute the deed, and this condition continued during the rest
of that winter and the next spring and summer. Sometime after
the preparation of these papers Arthur L. Foreman went to the
notary and procured both of them, that is, the deed of Decem-
ber 31, 1914, from his father to himself, as well as the deed in-
tended to be executed by himself and wife conveying the prop-
erty to his father, and took the same to his father's home, and
turned them over to him. It appears that this was done some
time in the spring of 1915, but as to the exact date of the
transaction the record is uncertain. During the summer of
1915 plaintiff again went away to Columbus, Ohio, and engaged
in work at his trade. The farm was conducted by his father
E. W. Foreman just as it had always been conducted thereto-
fore, except that the plaintiff's family resided with the said
E. W. Foreman on the farm. In October, 1915, plaintiff's
wife visited him in the city of Columbus, and at that time E.
W. Foreman sent by her to the plaintiff the deed which had
been prepared in the December previous conveying the real
estate and personal property to the plaintiff's father, with the
request and direction that it be executed by the plaintiff and
his wife and returned to him. Plaintiff and his wife executed
this deed on the 5th of November, 1915, and acknowledged the
same before a notary public in Franklin county, Ohio, and ac-
cording to the evidence mailed it to E. W. Foreman, by whom
it was received and placed on record in the following May.
Shortly thereafter plaintiff's wife returned to the home of her
father-in-law in Mason county, and she says that just after her
return her father-in-law gave her two papers and told her that
one was the plaintiff's deed to him, and the other his deed to
the plaintiff, and requested her to read the same and keep
them until he could go to Point Pleasant, the county seat of
the county, and have them recorded. She says that she did

read the papers, and that they were the deeds which he represented them to be, and that she put them in a stand drawer, and called her father-in-law's attention to the fact, and stated that he could get them there whenever he wanted them. This evidence was objected to as being incompetent and, of course, it cannot be considered, being a personal transaction with a deceased party by the wife of an interested party, but the same evidence is given by a daughter of the plaintiff, who was at the time thirteen years old. Sometime after this the plaintiff returned to his father's home and spent the winter there. The next summer, being the summer of 1916, he again went away from home and engaged in work at his trade, his family remaining at his father's house. That winter, being the winter of 1916-17, he returned to his father's home again and spent the winter there. In the month of March, 1917, his father went to the home of his daughter, the defendant Mrs. Roush. At that time his health was bad. In fact, in the month of May following, he died, having never recovered from the illness with which he was suffering at the time he removed to the Roushes. On the 16th of April, 1917, he made a deed conveying the 71-acre tract of land to his daughter Mrs. Roush for the consideration that he be allowed to control the same until his death, and that she pay to the plaintiff the sum of seven hundred dollars in seven annual installments of one hundred dollars each. He also at the same time made his will, by the terms of which he bequeathed all of his personal property, after some inconsequential bequests, to the plaintiff. The deed which he made to Mrs. Roush was put to record within a few days after its execution. Shortly after the death of E. W. Foreman in May, 1917, the will aforesaid was offered for probate, and was probated by the executor E. L. Foreman, a brother of E. W. Foreman, and an uncle of the plaintiff and the defendant Mrs. Roush. The plaintiff expressed dissatisfaction at the provision made for him by his father, as a result of the deed to his sister, Mrs. Roush, and the will aforesaid, and desired to purchase the farm from Mrs. Roush, but no agreement was reached, nor does it seem that any definite proposition was even made by him to that end. It does not appear that he made any claim to be the owner of the land

at that time or at any time prior to the institution of this suit. The defendant Mrs. Roush executed the notes aggregating seven hundred dollars provided by the deed, and tendered them to her brother, the plaintiff. He accepted them and took them home with him, but within an hour or two thereafter returned with them and objected that they did not bear interest. Mrs. Roush then proposed that she would get the seven hundred dollars in money and pay it to him and close the matter up. This he declined to do, but advised her that he would give her trouble in a way that she knew nothing about. No further communications, it appears were had between them until the bringing of this suit asking that the deed of December 31st be set up as conveying the title to the plaintiff, and that the deed of April 17th to Mrs. Roush be cancelled as a cloud upon his title, as well as the will disposing of the personal property which it is claimed passed to him by the deed aforesaid, and also asserting that his father E. W. Foreman was insane and did not have capacity to execute the deed and will aforesaid, for which reason the same should be set aside. Upon this latter issue the plaintiff took no evidence but his own, and he is not competent to give an opinion as to his father's condition based upon his observation of it, so that the issue of mental incompetency is not involved on this hearing. In addition to the above facts it is pertinent to state that during the winter of 1916-17 the plaintiff staid at his father's home in Mason county with his family, and worked around the farm; that in the spring of 1917 he and his father had a settlement in which his father allowed him the sum of sixty dollars for this work on the farm during that winter, and in which settlement it was ascertained that his father owed him the sum of $87.35, for which he gave him a check, which check the plaintiff collected. Shortly before his death E. W. Foreman advertised for sale practically all of his personal property, including his live stock, hay, corn and other grain, agricultural implements, etc., and made a sale thereof, at which the plaintiff Arthur Foreman was present and helped conduct the same, but never made any contention that the articles belonged to him, or that he was entitled to any of the proceeds derived therefrom, all of which was paid over to his father and used by him. During all of the time up until his

death his father controlled the farm, worked it, and received the crops raised thereon, and the proceeds arising from such thereof as were sold, without any claim in any way by the plaintiff that he was entitled to the same, or any part thereof. It appears further that the fear entertained by E. W. Foreman that he might be made liable for an illegal contract of the board of education, of which he was a member, passed away in the spring or summer of 1915, so that there no longer existed any necessity for divesting himself of the title to his property to prevent the collection of any judgment that might thus be obtained against him.

The contention of the defendants is that the deed of December 31, 1914, was never delivered. It was found after the death of E. W. Foreman in his trunk among other private papers, and had never been admitted to record. The plaintiff's contention is that when he signed and acknowledged the deed of November 5, 1915, conveying the property back to his father, it was the purpose that upon the delivery of this deed to his father his father would then deliver the deed of December 31, 1914, and revest the title in him. This contention would attribute to both of the parties very little business acumen. It appears that before that time the fear of a liability on account of the board of education matter had passed away, and that the only debt which E. W. Foreman owed was the debt of $150.00 mentioned in the deed of December 31, 1914. It further appears that he paid this debt off before his death, and no effort was ever made, or offer made, by the plaintiff to pay it. Under the conditions which existed in November, 1915, the deed which had already been delivered dated Dec. 25, 1914, was effective to vest the title to the real and personal property in the plaintiff, and only made it subject to the lawful debts of the grantor, which debts were the two notes which he owed to Roush, aggregating one hundred and fifty dollars. For him to convey the property back to his father at that time, and his father then to reconvey it to him would have been an entirely futile thing. It would have imposed no less obligation upon him than was imposed upon him by the deed of Dec. 25, 1914. The fact that the plaintiff procured from the notary the deed of December 31, 1914, and the unexecuted deed

from himself to his father, prepared at the same time, and delivered them to his father in the spring of 1915, is significant. If the parties still contemplated carrying out the arrangement suggested on December 31, 1914, that is, that the plaintiff reconvey the property to his father, and his father again convey it to him, subject only to the one debt which he owed Roush, and this was to be done in order to avoid paying any obligation to the board of education, why did they wait for nearly a year, or until the fifth of November, 1915, to accomplish this purpose? The plaintiff testifies that his father on December 23, 1914, considered the matter very urgent, and that it was necessary in order to defeat the payment of any obligation which might arise, because of his connection with the board of education, to act at once, and with that view wrote him to come to Mason county at once, which he did. It satisfactorily appears that sometime during the spring or summer of 1915 the fear of the liability on account of his connection with the board of education passed away, and this, no doubt, accounts for the failure of the plaintiff to execute the deed reconveying the property to his father, and of his father to deliver the deed of December 31st to him, and have the same recorded. In the fall of 1915 the father, having become satisfied that it was entirely safe for him to be reinvested with the title to his property, sent the same paper which had been prepared in December, 1914, but the dates of which had been left blank, to the plaintiff to be executed by him reconveying the property, and this paper was so executed, delivered and recorded. This is the only theory consistent with the conduct of the parties.

It is quite true that it is not necessary that manual delivery be made of a deed in order to make it effective. The question of delivery is largely one of intention, and when the deed is not itself delivered to the grantee therein this intention of the parties must be gathered from their conduct and from any statements which they may have made in regard to the transaction. In this case the deed of December 31, 1914, signed and acknowledged on that day by E. W. Foreman, was found after his death among his private papers. More than two years had passed since its execution, and he had never delivered it manually to the .

grantee therein, but had kept it during all of that time himself. This might not of itself be conclusive, but during the same time he still retained control of the farm, worked it, and enjoyed the proceeds arising therefrom. Not only that, but practically all of the personal property which was conveyed by the deed was sold by him with the full knowledge and without any claim thereto by the grantee in the deed; and as further expressing the intention of the grantor in regard thereto, he conveyed away the real estate to his daughter, Maude Roush, by the deed of April 17, 1917. This act was, of course, entirely inconsistent with the theory that he had theretofore conveyed it to the plaintiff. Not only this, but in order to vest his personal property in the plaintiff he bequeathed it to him by his will. If the deed was effective, no will was necessary for this purpose. The conduct of the plaintiff himself is just as unequivocal. He never made any claim to either the real or personal property during the more than two years from the time the deed was executed until his father's death. It is true, his family lived upon the farm, but most of the farming was done by his father, or under his direction. His father employed men to work the farm and paid them, and even during the winter of 1916-17 while the plaintiff did some work upon the farm he received compensation therefor from his father, and before his father's death, when he learned of the conveyance of the real estate to his sister Mrs. Roush, he did not then make any claim to be the owner of it, and after his father's death he did not make any claim to be the owner thereof, or even mention or suggest that a deed had ever been made therefor to him other than the one of December 25, 1914. At the time his sister offered to give him the notes provided to be given by her he did not suggest that he already owned the real estate, but he did complain that his father did not treat him fairly in the distribution of his property. It does not appear that until the institution of this suit he ever made the slightest claim to this estate. The presumption that the deed of December 31, 1914, was never intended to convey title, and was never delivered, arising from the fact that it was found among the grantor's papers at the time of his death, instead of being rebutted by the circumstances arising from the conduct of the parties

at the time and subsequent thereto, is much strengthened. In fact the conduct of both the grantor and the grantee in the deed is entirely inconsistent with the theory that the plaintiff was the owner of the property. It is very clear to us that the only purpose of the deed of November 5, 1915, from the plaintiff to his father E. W. Foreman, was to revest the title of this property in the father, after all danger had passed from the threatened suit on account of his connection with the board of education. All of the parties treated it in this way. The circumstances surrounding the whole transaction indicate that this was the fact.

We are therefore of opinion that the decree of the circuit court is wrong, and that the plaintiff is not entitled to any relief upon the showing made. We will reverse the decree complained of and dismiss the plaintiff's bill.

*Reversed; bill dismissed.*