# CHARLESTON.

REBECCA HUNT v. HENRY HUNT, TRUSTEE, *et als.*

Submitted October 3, 1922. Decided October 10, 1922.

1. FRAUD—*Must be Clearly Proved.*

He who alleges fraud must clearly and distinctly prove it, either by circumstantial or direct evidence. It will not be presumed from doubtful evidence, or circumstances of suspicion. The presumption is always in favor of innocence and honesty. (p. 691).

2. EVIDENCE—*Parol Evidence Admissible to Show True Considera-*
*tion in Deed But Not for Invalidation; Recited Considera-*
*tion in Deed Cannot be Attacked as Between Parties to Show*
*no Consideration.*

Parol evidence is admissible to show that the true con-
sideration in a deed is different from that named, or that it
has not, in fact, been received, if the purpose is not to invali-
date the deed as a conveyance. The recited consideration as
between the parties cannot be attacked for the purpose of
showing the deed was not founded on valuable consideration.
(p. 693).

3. DEEDS—*Manual Delivery Not Essential; Delivery Depends on*
*Intention; Recording by Grantee Shortly Subsequent to*
*Acknowledgment Prima Facie Evidence of Delivery.*

Manual delivery of a deed is not always necessary to com-
plete the transaction, delivery being a matter of intention
often deduced from the action and words of the grantor and
the circumstances surrounding the transaction; and where
the deed has been recorded within a few days after its ac-
knowledgment, presumably by the grantee or some one for
him, it is *prima facie* evidence of delivery. (p. 694).

Appeal from Circuit Court, Jackson County.

Suit by Rebecca Hunt against Henry Hunt, trustee, and
others. From a decree for defendants, plaintiff appeals.

*Affirmed.*

*Lewis H. Miller, W. F. Boggess,* and *S. P. Bell,* for ap-
pellant.

*J. L. Wolfe,* for appellees.

LIVELY, JUDGE:

This suit is for the purpose of cancelling a deed executed
by the plaintiff below, and appellant, dated the 9th day of
October, 1894, in which her husband joined, conveying two
tracts aggregating about 45 acres lying on the waters of Big
Mill Creek in Jackson County. The decree, entered the 7th
of April, 1922, denied relief and dismissed the bill.

The plaintiff, Rebecca Hunt, was married to Benjamin
Hunt, now deceased, in the year 1880. Prior to that time
Benjamin Hunt had been married twice, having by his first
marriage four children, Henry Hunt, Luverna Hunt, Julius

Hunt, and Aldarina Hunt, all of whom are now living with the exception of Aldarina Hunt, who intermarried with John Kay, and afterwards died leaving as her heir Leo Kay; by the second marriage he had one daughter, now Mrs. Ella Oldham. In 1879 he owned 126½ acres of land which he conveyed to the children by his first wife. His second wife, Miss Sayre, owned 100 acres of land which, after her death, came into his hands as tenant by curtesy. Subsequently he conveyed his curtesy right to his daughter, Ella Oldham, who was the heir to this land. This land is known as the "Oldham tract" in these proceedings. After the marriage of the plaintiff in 1880, they resided on this Oldham land, and in 1889 purchased a portion of the land in controversy containing 14 2/3 acres from James Rice and wife, for the sum of $227.31; on the 15th of September, 1890, purchased the other tract containing 40 acres from the same vendors for the sum of $400.00. It appears that this land purchased from Rice was paid for by the joint efforts of plaintiff and her husband. She says she received from her parents about $250.00, which was used in payment and that the remainder was paid with the proceeds derived from farming the Oldham land which her husband possessed as life tenant. In 1894 the deed which she now seeks to set aside was executed by her and her husband. The material portions of this deed are as follows: "This Deed and declaration of trust made this 9th day of October, 1894, by and between Benjamin Hunt and Rebecca Hunt, wife of the said Benjamin Hunt, of the first part, and Henry Hunt, trustee, of the second part.

Witnesseth, That for and in consideration of One Dollar in hand paid, the receipt of which is hereby acknowledged, and the further consideration of the love and affection which the first parties have for each other, the first parties do hereby grant and convey unto the second party, trustee, the following described real estate, * * * * * * * To have and to hold, unto the said Henry Hunt, in trust, and the first parties do hereby agree and declare that the said Henry Hunt shall have and hold the said two tracts of land above described in trust for the sole use and benefit of the said

Rebecca Hunt and Benjamin Hunt, jointly and equally, share and share alike and equal, and the first parties do covenant to and with the said trustee to warrant to him as such trustee generally the real estate hereby conveyed, and it is further agreed and declared that, in the event of the death of either of the first parties before the other, the said Henry Hunt as such trustee, shall hold the said lands for the sole use of the survivor and until the death of the survivor, and at and upon the death of the survivor to be used in trust by said trustee, for the heirs of the body of the first parties and if either of the first parties should die without heirs of his or her body, then to the heirs of the body of the other.

Witness the following signatures and seals.

BENJAMIN HUNT    (Seal)

REBECCA HUNT    (Seal)"

This deed was acknowledged before George W. Staats, notary public, on the 9th day of October, 1894, and appears to have been admitted to record in the county clerk's office nine days after it was acknowledged.

The bill charges, and the plaintiff says in her deposition, her husband told her at the time she executed this deed, that it was for the purpose only of securing him his life maintenance and support out of the land in case she first died, and relying upon this representation and without reading the deed she signed and acknowledged it; that she did not know it made provision for disposition of the land after the death of both grantors. The bill further charges the defendants, who, together with the trustee, Henry Hunt, are the children of Benjamin Hunt by his former marriages, procured the deed to be prepared and executed with the sole object in view of obtaining inheritance in this land which was in her name, and fraudulently represented to her and her husband that said writing was only for the purpose of guaranteeing the support and maintenance and a home for Benjamin Hunt in case she should die first, and that they were induced to sign and acknowledge the same in that way. The evidence totally fails to connect any of the defendants

with the preparation or execution of the deed. It is not shown that any of them knew of its preparation or execution. At the time the deed was executed, the plaintiff was in full vigor and health; at the time her deposition was taken she was sixty-six years old and her testimony concerning the execution of the deed and its purposes is unsatisfactory. She says in one portion of her testimony that the deed was brought to her by her husband and the notary public for her signature, but when her attention was called to the date of the deed, which was the 9th day of October, 1894, and the date of the acknowledgment December 20, 1894, a difference in time of over two months, and she was asked where the deed was kept during that time, she replied, "I must have kept it." She testified also in one portion of her deposition that she did not discover the effect of the deed until after her husband's death; and in another part of her deposition that she ascertained its true import about a year before his death, which occurred in 1920. Her suit was instituted at June Rules in 1921. She says that after the deed was signed and acknowledged by her it was left in her charge by the notary, and she placed it in the drawer of a safe which stood in the sitting or living room with other papers of like character belonging to herself and her husband; that she had charge of the papers in the safe but that he also had access thereto, and usually when any paper was required from that drawer she or some one by her direction procured them. She also stated that "we had possession of the deed." She afterwards interpreted "we" as meaning herself. She does not know by whom the deed was placed on record, and it does not appear who had caused it to be recorded. Presumably, it was Benjamin Hunt, for it appeared that the trustee and grantee in the deed knew nothing of its execution until after the tax ticket came out in his name as trustee, and he directed the attention of his father and step-mother to the fact, and they paid the taxes thereafter. It can reasonably be concluded that Benjamin Hunt had the deed admitted to record. It appears that plaintiff was able to read and write and had a fair common

school education. Although the deed remained in the safe drawer for twenty-six years, where, no doubt, she observed it hundreds of times, she says she never read it nor noticed that it had been admitted to record. While the plaintiff stated that she had no information of the true import of the deed and was led to believe that the effect of it was to secure a maintenance for her husband she also said in answer to another question, "Well, I signed the deed. I signed the deed, but I signed it against my will, for I knew there would be trouble over it in the future. I signed it to keep the good will of the children." Just what she meant by this answer it is hard to determine. Her husband would have been tenant by curtesy without the execution of this deed. Evidently there had been some discussion about the title to this property in which the children had been mentioned or she would not have answered that she signed it to keep the good will of the children. No doubt, had her husband been living, more light would have been given upon the circumstances and reason for the execution of this deed.

. Mrs. Ella Oldham testified that she was present when the deed was brought to be signed, but that she was young at the time, wouldn't say positively who brought it there, but remembered that George Staats was the one who took the acknowledgment, and that her father told her step-mother the deed was for his maintenance as long as he lived should she die first, and that her step-mother was forced to sign it "to keep down a racket between him and his children." She said in substance that her father had gone to Ripley and had the deed prepared, and then came home and told his wife that he had such a deed prepared which would secure his maintenance as long as he lived, and kept on after her until she agreed to sign it, and later the notary came and took the acknowledgment. It is evident from her testimony, that this deed had been discussed between her father and step-mother before it was signed; and just why there should be any controversy about signing a paper which secured him the possession of the farm during his life after her death, a right which he had under the law, we fail to perceive. We

cannot but think that the whole import of the deed was dis-
cussed between the grantors, and that they agreed upon its
provisions, possibly after some extended discussions. At
that time, it must be remembered, the wife was vigorous and
healthy, and in all probability would bear children. She was
much younger than her husband, and would likely outlive
him, in which case her children would take the land, largely
paid for by her husband. It was not an unreasonable or
burdensome arrangement, and followed soon after the pur-
chase price had been paid.

The lower court dismissed the bill.

The points of error relied upon are: (1) fraud and deceit
of Benjamin Hunt in procuring his wife to sign the deed;
(2) want of consideration; (3) non-delivery of the deed.

We have not considered nor passed upon the admissibility
of Rebecca Hunt's testimony of what occurred between her
and her husband prior to and at the time of the execution
of the deed. We do not think it necessary, in view of the
disposition which we make of the case.

It is the universal rule that fraud, to be established by
circumstantial evidence or by direct testimony, must be
clearly and satisfactorily proved. It will not be presumed
from doubtful evidence, or circumstances of suspicion. It
cannot be presumed. The presumption is always in favor
of innocence and honesty. *Hord* v. *Colbert*, 28 Gratt. 49;
*Board of Trustees* v. *Blair,* 45 W. Va. 812. The rule is so
universally acknowledged, it would serve no useful purpose
to cite authorities. A fraudulent intent must be shown to
have existed in the mind of the person who is accused of
perpetrating the fraud. 12 R. C. L. p. 420, sec. 167. We
cannot say, in view of the evidence, that the husband
knowingly and deliberately perpetrated a fraud. The
evidence is not of that clear and convincing character which
is sufficient to overcome the presumption of innocence and
fair dealing. The land had been paid for largely by the
efforts of the husband, and the title had been recently con-
veyed to the wife. The transfer of the property to a trustee
for the joint use of the parties and for the maintenance and

support of the one surviving, with remainder to the children of the one who survived, was not unreasonable or oppressive as the conditions then existed. Moreover, it is well established that where a person signs a deed having opportunity to read it and being able to read and understand, and who fails to read before signing, is negligent in protecting his rights, and a court of equity will not be swift to give relief. *Hale* v. *Hale,* 62 W. Va. 609. Twenty-six years have passed since the transaction occurred, and the flight of time dulls the edge of recollection, and it is likely that the witnesses to the transaction have forgotten some of the material details. Neither the evidence of the notary nor of the draftsman of the deed was taken, and no reason given why it should not have been produced. Moreover, the party against whom the fraud and misrepresentation is alleged has departed this life, and his lips are silent. It is significant that this suit was not instituted to annul this deed while he was living, when he could have, more than likely, rebutted insinuations now made against him. The defendants, who appear to have been entirely ignorant of the transaction, are now deprived of his evidence. Plaintiff, instead of promptly instituting suit at the time she discovered the true import of the deed, waited until after her husband had died before bringing her suit, and material and vital evidence had been lost to the defendants. No general rule as to what constitutes laches, in respect to the lapse of time has been or can be fixed. Each case must depend on its own circumstances. Some complainants are held to have been barred by the lapse of only a few months, as in *Seivking* v. *Litzler,* 31 Ind. 13 ; others, after the flight of many years. *Aylett* v. *King,* 11 Leigh 486. If one who has by mistake or fraud, obtained property of which he could be deprived by reason of fraud or mistake, be permitted to hold it for a long time until he has.made expensive improvements, or it has greatly increased in value, these facts, of course, will shorten the period of time which would constitute laches. 18 Am. & Eng. Cyc. of Law, 102. So, if an injured party delays until the alleged wrong-doer is placed at disadvantage from the loss of wit-

nesses; or the rights of third parties have intervened, he will be precluded by laches. It is plainly apparent that these defendants have been placed at a great disadvantage by the death of their father. The fact that the plaintiff failed to promptly institute suit while her husband was alive has an important bearing in determining the question of fraud and misrepresentation here relied upon. We do not think, under the circumstances and this evidence, fraud and misrepresentation on the part of the husband has been shown with the degree of conclusiveness which would justify cancellation of the deed.

By reason of the confidential relation existing between the husband and the wife, appellant asserts that when she has made her charge of fraud and misrepresentation, with some evidence to sustain it, the burden of proof shifted to the defendants to show the *bona fides* of the transaction, and to sustain this proposition cite: *Mankin* v. *Davis*, 82 W. Va. 757; *McCarthy* v. *Saunders*, 83 W. Va. 613; *Colston* v. *Miller*, 55 W. Va. 490; *Carlsbad* v. *Kelley*, 84 W. Va. 190, and other citations, all of which were suits to set aside conveyances in fraud of creditors, in which the grantors and grantees were in confidential relations such as husband and wife, father and son, and the like. That class of cases has no application here.

It is asserted that no consideration in fact passed, and the deed should be held void for that reason. It is well established that parol evidence is admissible to show the actual consideration paid or promised is different from that recited in the deed; but it is not admissible to alter or contradict the legal import of the deed. The weight of authority is that the acknowledgment of the payment in a deed is open to unlimited explanation in every direction; but the recited consideration cannot be attacked for the purpose of showing that the deed was not founded on valuable consideration; the legal import of the deed, the transfer of the title, cannot be defeated in that way. *Baughman* v. *Hoffman*, 90 W. Va. 388, 110 S. E. 829; Devlin on Real Estate, sec. 823; Brown on Parol Evidence, sec. 92. The rule is stated in 3d Jones

on Evidence, sec. 460: ''The consideration expressed is only presumptive evidence that it is the real consideration, and that presumption may be overcome by parol evidence showing another or greater consideration. The reason for relaxing the general rule in this particular is stated to be that a change in or contradiction of the expressed consideration touches not the covenants of the grantor and grantee in the deed, and neither limits nor enlarges the grant.'' The grantor may show what was the real consideration, but he cannot, by showing want of consideration, impeach the deed, and thereby defeat the title passed by it. The stated consideration of $1.00 is sufficient to support the deed. It is a usual way of stating consideration for a deed, as hundreds of deeds through many years will verify. But, will not the consideration of love and affection stated to be existing between the grantors sustain the deed in question? The import of this deed was to convey to the husband through a trustee a beneficial interest in the land in addition to that which he would hold as tenant by the curtesy should the wife die first; and the consideration of love and affection would be sufficient to sustain the transaction of this beneficial interest.

The third point of error is non-delivery of the deed to the grantee. Delivery of the deed in many cases is a matter of intention, and where the circumstances are such that an intent to deliver is plainly apparent and where the grantor has executed and acknowledged it with that purpose and desire, the conveyance is as effective as if the deed had been actually delivered. *Foreman* v. *Roush*, 87 W. Va. 341. See *Roanes* v. *Archer*, 4 Leigh 565, where it was said: ''Indeed, no particular form of ceremony is necessary to make a good delivery. It is sufficient if the grantor testifies his intention to deliver or put the deed into the possession of the other party.'' And in *Hutchinson* v. *Rust*, 2 Gratt, 394, (2nd point of Syl.) it was said: ''A deed being acknowledged before justices by the grantor, who retains possession of it; it depends upon the intention of the grantor at the time, whether the acknowledgment is a complete execution of the deed.''

It is true that the mere acknowledgment of a deed is not conclusive evidence of its delivery, but is a circumstance tending to show delivery. *Ferguson* v. *Bond,* 39 W. Va. 561; *Lang* v. *Smith,* 37 W. Va. 725; *Howe* v. *Hould,* 28 Gratt. 11; *Adams* v. *Baker,* 50 W. Va. 249; *Delaplain* v. *Grubb,* 44 W. Va. 613. A delivery to the trustee is not usual; generally the delivery is made to the real party in interest. This deed was made for the benefit of the husband and his children under certain conditions, which might thereafter arise. A delivery to him was a sufficient delivery, and it appears that the receptacle in which the deed was placed was as much his as the wife's. His other private papers were in the same place, and he had access thereto. The fact that the deed was recorded, evidently passing through his hands, and reaching the county clerk's office within nine days after its acknowledgment, is a circumstance which is almost conclusive that delivery was made. The possession of a deed executed and acknowledged with all the formalities is *prima facie* evidence of its delivery. *Ward* v. *Ward,* 43 W. Va. 1; *Seibel* v. *Rapp,* 85 Va. 31; *Newlin* v. *Beard,* 6 W. Va. 110. The wife must have known, or should have known of its recordation, because the next year after signing the taxes were charged to the trustee, of which she was advised, and the tax tickets which came into her possession so indicated; in addition to this, the deed, which was before her for many years, had the clerk's notation of recordation thereon.

From what we have said it follows that the decree of the circuit court is affirmed.

*Affirmed.*